## Green v. McCloud.
## Same v. Price et al.

October 29, 1946.

Ed. H. King for appellant.

J. L. Harrington for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appeals are from judgments below in consolidated suits ordered heard together here. In the first, plaintiff McCloud sought to enjoin Green from interfering with a sewer line, which belonged to McCloud and one Spradlin, discharging sewage into a branch on or near Green's property. The court enjoined Green and he appeals.

Green was plaintiff in the second suit; B. L. Spradlin and Dewey Price defendants. Spradlin died during pendency and action was revived in the name of his daughter. As his cause of action he alleged that defendants were the owners of adjacent land upon which were located a dwelling house and outbuildings, a dairy barn and poultry house; that a small branch was located on or near his lot, he being the riparian owner; that defendants did not own any such rights. He charged that they allowed sewage from residences and outbuildings to run through open ditches or buried pipes into the bed of a small stream (Berger Branch) frequently dry, which contaminated the water and created unhealthy and obnoxious odors, much to the discomfort of his family, their guests, reducing materially the enjoyment of his property and its market value. He sought only a permanent injunction.

Green in answer to the McCloud petition denied its allegations, and by affirmative answer and counterclaim denied he had done anything which interfered with the sewage flow. He alleged that the McCloud (household) sewage emptied into the stream at a point about one foot upstream from his lot, charging pollution and resulting discomfort and injury as in the Spradlin-Price suit, and asking the same relief. This counterclaim met with a reply denying its allegations, and pleading prescriptive right in himself and the public, and estoppel against Green on the ground of notice at the time of purchase. There was no plea of limitation.

In the Green v. Spradlin case defendants denied allegations of the petition, and thus issues were completed. Proof was heard on depositions, and upon submission the chancellor enjoined Green from interfering with the sewer, or doing anything to prevent its repair or maintenance. In the Spradlin suit the chancellor denied Green's prayer for relief and dismissed his petition. Green has appealed from each decree.

From the proof and by aid of a drawing attached to appellants' brief, we gather the following to be the physical situation of the properties, the small stream and the sewer in controversy. The several lots appear to be in the small unincorporated mining town of West Van Lear; Green is the owner of a lot facing on the east side of Stafford Street, which runs northwestwardly from Railroad Avenue, and another lot on the west side of that street, through which Berger Branch runs. The branch does not touch the first lot, on which Green's residence is located. The Spradlin-Price lot is northwest of Green's lot, and the McCloud lot adjoins it, both on the northwest side of Clay Avenue. The household sewage from the McCloud lot and the household and barn sewage from the Spradlin lot are carried to Berger Branch, not through any property of Green. The stream rises south of all the lots and flows (when flowing) through an unidentified lot, thence through a culvert under Stafford Street into Berger Branch, thence into Big Sandy River. The stream does not traverse or bind on the Spradlin or McCloud lots. There appear to be two sewers, one called the "household sewer," jointly owned and used by McCloud and the Prices, and the "dairy barn sewer," owned and used by the Prices. The McCloud sewer joins the Spradlin sewer on the Spradlin-Price property. This begins at a buried tile near the dairy barn, and runs through the tiling until it reaches Clay Avenue. It then makes a right angle turn and continues for a few feet as an open ditch until it reaches the end of the sidewalk along Clay Avenue, where it passes under the sidewalk, then continues in a tiled sewer to Stafford Street, then through a small culvert south under Clay Avenue, then an open ditch along Stafford Street, emptying into Berger Branch at a point near where it passes through Green's lower lot.

The proof shows that at the time Green purchased his lot in 1920, Berger Branch was in common use by the public; the household sewer line from the McCloud and Spradlin properties had been put in more than five years before suit and the persons who owned the properties were then and theretofore using Berger Branch for drainage; it is not shown that at that time there was in use a dairy barn on the Price property.

The chancellor did not favor us with a written

opinion, which might have indicated his reasons for the two rulings. However, upon a reading of the proof, we conclude that the case boiled down to a fact case rather than one calling for the close application of the law relating to injuries arising from the pollution of a stream, so well and elaborately set out in appellant's brief. We say this because by the great preponderance of the testimony, any injury to appellant's property is so much minimized as to have justified the chancellor's conclusions; from the proof the chancellor might have concluded that appellant sought equitable relief, when his own premises were not in order.

The plea of estoppel would be a sound one and upon which the court's conclusions could have rested, with respect of the use of Berger Branch as a common public sewer outlet, but it is correctly argued by appellant that a person acquiring property has the right to expect and require his neighbor, notwithstanding previous use, to utilize his property so as not to interfere with the reasonable enjoyment of his premises. There is no prescriptive right to maintain a nuisance not purely private. However, the fact that the complainant moved to the nuisance is but a factor, though it is an important one in connection with all the circumstances in determining the equities of a given case. Hall v. Budde, 293 Ky. 436, 169 S. W. 2d 33. We may interpolate here some excerpts from the above case which are fitting. After stating facts, we wrote:

"Thus it will be seen that there is no question of law to be resolved in appellants' favor, and that if the Chancellor erred in denying them relief, it was because he failed to properly evaluate the testimony denying the actuality, or rather, the extent of the odors and sounds arising from the housing and feeding of a large number of swine. * * * There is not a single word of testimony in this case, * * * to the effect that the defendant, maintained or operated his business in a manner other than that which a full recognition of sanitary regulations required. * * * The positive evidence of the plaintiffs * * * with reference to the existence of a nuisance is just as positively refuted and denied by the evidence of the defendant." Appellants' "inactivity over a long period of time must be taken into consideration

by the Court as an element of substantial importance in deciding this close question.''

A detailed recital of facts here would be of no interest to the Bar and we are of the opinion that a brief summary may be sufficient on which to base our conclusion that the ends of justice would most likely be served by following the time honored rule not to interfere with the chancellor's findings under the facts presented.

Appellant's testimony as to the effect of the dumping of sewage, or property injury, from the two sewer pipes in question is not any too impressive. On the other hand it is shown by a vast majority of witnesses that by the use of the sewers, instead of allowing the sewage to flow surfacewise into Berger Branch, conditions are much more sanitary. They also with one accord agree that the situation has not at all depreciated the value of the property, either in sale or rental value. With like accord they agree that from the time West Van Lear was created (originally incorporated) as a town, Berger Branch has been the natural outlet to the river for sewage, both household and barnyard, and that situation of course existed before and at the time appellant bought his property. It is shown that for all these years home owners have used the branch for the purpose. Homes of fifteen or twenty families in the vicinity, as well as several storehouses, and a refinery, have been and are allowing sewage to run into the branch, some openly over the surface, some by means of tile drains . It appears, and is not denied, that appellant's sewage, including that from a hog pen and a cow lot, finds its way into this same branch.

Appellant, it appears, has never made any complaint except as to the use of the joint sewer from appellees' properties. All witnesses agree that it is impossible to tell whether the odors (about which no others seem to complain) arise from appellees' uses, or the use of the many other householders. It also appears that the sewers from appellees' properties are flushed by means of private water systems; that the cow barn is only used, except at certain times, while the milking is in progress, the cows being on pasture most of the time. No solid matter is turned in from the cow barn, but is placed on the lot or garden; appellant is not seeking relief from

any injury arising from the use of the barn and poultry yard, but only from the alleged injury caused by allowing the sewers to empty into the branch.

In the McCloud case it appears that at one or more times the sewer became injured or broken so as to turn sewage on the surface, and which did cause some inconvenience and discomfort. This interference of flowage was caused by various breaks at several points, and by the stuffing of a sack in a part of the sewer. These were such that the conclusion might be reached, as it was by witnesses, that some manual physical force had caused the breakages. However, this may be, when McCloud undertook to make repairs and restoration, appellant objected to such an extent that he (McCloud) had to resort to legal means. We are of the opinion that the chancellor was correct in the Price-Spradlin case in denying the relief sought. Consequently he was correct in granting relief in the McCloud case.

Judgments affirmed.